IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



FILED
JUN 16 2017
Clerk, U.S. District Court
District Of Montana
Billings

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 17-19-BLG-SPW |
| Plaintiff, | |
| vs. | OPINION and ORDER |
| JAMES JOSEPH STREITZ, | |
| Defendant. | |

Defendant James Joseph Streitz has moved to suppress statements made to law enforcement on July 21, 2016. The court held an evidentiary hearing on the motion on June 6, 2017. At the hearing, the court heard testimony from Montana Probation and Parole Officer Seth Weston, and Alcohol Tobacco and Firearms Agents Steven Feuerstein and Scott Dvorak. For the reasons set forth below, the court grants the motion.

I. Background

On February 16, 2017, a grand jury indicted Streitz on one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The charge against Streitz arises from an incident on July 3, 2016, when Streitz was a passenger in a car stopped for speeding. At that time, he was under felony supervision by Montana Probation and Parole Officer Seth Weston. Law enforcement ultimately

1

obtained a search warrant for the car and found a Raven Arms .25 caliber pistol under the passenger seat where Streitz had been sitting.

On July 6, 2016, as required by his probation conditions, Streitz called Weston and reported that he had contact with law enforcement when his girlfriend, Jennifer Mims, was pulled over for speeding. The next day, Billings Police Department Officer Martin called Weston and advised him that a gun had been found in Mims' car.

On July 21, 2016, ATF agent Steven Feuerstein contacted Weston and told Weston he was interested in interviewing Streitz about the gun found in the car. Feuerstein wondered if Weston would schedule an appointment with Streitz so that Feuerstein could attend and attempt to interview Streitz. During his tenure in Montana, Weston had never called in a probationer to speak with law enforcement at the probation office. He called Streitz and offered "some sort of excuse" for Streitz to come to the office that morning at 10:00 a.m. The meeting was set up just for the purpose of the ATF agents interviewing Streitz; it wasn't the prearranged monthly meeting with Streitz. According to Weston, Streitz was required to come in to the office, if requested, as a condition of his probation. Weston did not tell Streitz the ATF would be at the office to interview him.

When Streitz reported to the Montana Probation and Parole Office, as was typical practice, he signed the log book and pushed the buzzer to advise the

secretary he had arrived. Weston retrieved Streitz from the lobby, led him through a keypad locked door, and brought Streitz to his office. Weston described his office as very small with a small window that looks out into the hallway. To the right of the doorway, two seats faced Weston's desk, which had a chair behind it facing the door. Weston sat Streitz down in one of the chairs facing his desk and told him, "I know what's going on and I know you know what's going on" and that he had two ATF agents there to talk to Streitz. Weston left his office. Weston did not tell Streitz he had to talk to the agents, nor did he tell Streitz he could decline to talk to them.

ATF agents Feuerstein and Dvorak entered Weston's office and introduced themselves. Feuerstein told Streitz they wanted to talk to him about the gun found in Mims' car on July 3, 2016. Feuerstein told Streitz that he was not under arrest and he did not have to talk to them, but if he did not want to talk to them, he would need to check with his probation officer. Feuerstein then seated himself behind Weston's desk, Dvorak sat to the right of Feuerstein and Streitz sat on the other side of the desk, facing the agents, with his back to the office door. The door remained open. Feuerstein began the recorded interview. Streitz was not read his *Miranda* rights.

During the recorded portion of the interview, Feuerstein reiterated that Streitz's probation rules did not allow him to have firearms. Streitz denied

3

ownership of the gun and said that his girlfriend carried it for protection. When Streitz denied touching the gun, Feuerstein told Streitz he believed the agent on the case intended to send the gun away for fingerprint and DNA identification. Streitz then admitted that he had touched it when he found it in his girlfriend's purse.

The agents talked with Streitz for less than half an hour about the other items found in the car, his girlfriend, and Streitz's living situation. Streitz was not restrained in any way, and there was no confrontation. No threats were made. No yelling occurred, and Streitz did not seem upset during the interview. At the end of the interview, Feuerstein advised Streitz that he could not tell Streitz what would happen one way or the other, but that Streitz could be looking at federal prison. He then concluded the interview.

After Feuerstein turned off the recording device, Feuerstein and Dvorak left Streitz in Weston's office and left the building. Weston returned to his office and completed his monthly meeting with Streitz. He requested a urinalysis and set Streitz up for his next monthly meeting. Weston told Streitz that he was aware of the ATF investigation and that if Streitz had any concern for his freedom, he needed to stay in compliance with his probation. Weston concluded the meeting and escorted Streitz back to the lobby and Streitz left.

Weston testified that the area between the lobby door and his office was a secured area where Streitz would not be allowed to walk alone. He stated that Streitz would not be able to leave his office without being escorted out.

## II. Discussion

Streitz moves to suppress the statements he made to Feuerstein and Dvorak. He argues he was subjected to custodial interrogation without being given his *Miranda* warnings, and his statements were not voluntary.

### A. Streitz was subjected to custodial interrogation.

The prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The protections established in *Miranda* only apply when a person is "subjected to custodial interrogation." *Berkemer v. McCarty*, 468 U.S. 420, 434 (1984). A person is in custody when, in light of the objective circumstances of the interrogation, a reasonable person would have felt he or she could not freely walk away from the interrogators. *United States v. Barnes*, 713 F.3d 1200, 1204 (9th Cir. 2013); *see also Howes v. Fields*, 132 S. Ct. 1181, 1189 (2012). The test is from the objective

view of a reasonable person, not the defendant's subjective mindset. *J.D.B. v. N. Carolina*, 131 S. Ct. 2394, 2402 (2011).

Courts must consider all of the circumstances surrounding the interrogation to determine whether the person was in custody. *United States v. Coutchavlis*, 260 F.3d 1149, 1157 (9th Cir. 2001). The Ninth Circuit has set forth the following factors as those most relevant to determining whether a reasonable person would believe he could terminate the interrogation and leave:

(1) the language used to summon the individual;

(2) the extent to which the defendant is confronted with evidence of guilt;

(3) the physical surroundings of the interrogation;

(4) the duration of the detention; and

(5) the degree of pressure applied to detain the individual.

*Barnes*, 713 F.3d at 1204 (citing *United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002)). Other factors may also be "pertinent to, and even dispositive of, the ultimate determination whether a reasonable person would have believed he could freely walk away from the interrogators." *Kim*, 292 F.3d at 974. For the reasons further explained below, the court finds that, considering the totality of the circumstances, Streitz was in custody.

### 1.    The Language Used to Summon Streitz

The first *Kim* factor directs the court to consider the language used to summon Streitz. Where a defendant voluntarily consents to speak with police officers, such a circumstance suggests that the interrogation was non-custodial. *United States v. Bassignani*, 575 F.3d 879, 884 (9th Cir. 2009) ("Where we have found an interrogation non-custodial, we have emphasized that the defendant 'agreed to accompany' officers to the police station or to an interrogation room."). Here, Streitz did not appear voluntarily. Instead, his probation officer requested he appear for a meeting; a request Streitz was not free to ignore. Reporting to his probation officer when requested was a condition of his probation, which if ignored, may have led to revocation of his probation. This factor weighs strongly in favor of finding custody.

### 2. The Extent to Which Streitz was Confronted with Evidence of Guilt

Next, the court considers the extent to which the agents confronted Streitz with evidence of guilt. This factor weighs in favor of finding the interrogation custodial when the tone of the questioning is "aggressive, coercive, and deceptive." *Bassignani*, 575 F.3d at 884-85. Conversely, when the interview is a "consensual" conversation "conducted in an open, friendly tone," this factor weighs in favor of finding the interrogation non-custodial. *Id.* The court finds that there was nothing aggressive, coercive, or deceptive about the agents' interaction with Streitz during the discussion.

7

Feuerstein credibly testified that he and Dvorak introduced themselves and informed Streitz that they would like to ask him questions about a gun found in a car he was in. Their tone was "conversational," they were dressed in plain clothes, did not draw their service weapons, did not command any conduct, informed Streitz he was free to leave, and did not search Streitz before the questioning. In all, the court finds that the overall tone was neither aggressive, coercive, nor deceptive, but was instead a consensual conversation conducted in a cordial manner. *See Bassignani*, 575 F.3d at 884-85. This factor weighs against a finding of custody.

### 3. The Physical Surroundings of the Interrogation

The third *Kim* factor instructs the court to consider the physical surroundings of the interrogation. Here, the physical surroundings during the interrogation were facially intimidating. While the office was very small, Feuerstein and Dvorak sat on the opposite side of the desk and Streitz had easy access to an open door. Streitz was not handcuffed or patted down when he entered the office and the door remained open during the interview. However, the court finds it significant that Weston requested Streitz come to the probation office and misrepresented the reason why. Streitz did not agree to speak with Feuerstein and Dvorak on his own terms or at his chosen location. *Compare Oregon v. Mathiason,* 429 U.S. 492 (1977) (finding this factor weighs against custody when defendant came

8

voluntarily to the police station and was immediately informed he was not under arrest), with *Barnes*, 713 F.3d at 1204 (finding custody where defendant was told to appear for a meeting with his probation officer under the threat of revocation of parole and his probation officer misrepresented the purposes of the meeting).

Further, the location itself is coercive. The Ninth Circuit has held that when an interrogation is conducted in a state probation office, this factor weighs in favor of finding that the defendant was in custody. *See Barnes,* 713 F.3d at 1205. In *Barnes,* the defendant, like Streitz, was questioned by federal law enforcement officers in a probation office after being escorted there by his probation officer. *Id.* at 1204. The Ninth Circuit found that, "taking into consideration all of the factors, particularly . . . the location . . . of the interrogation . . . a reasonable person in Barnes' circumstances would not have felt free to leave." *Id.* at 1205. At least one other district court has also found that a probation office qualified as a "'hostile and coercive' environment because the defendant is "in a confined space where he might [feel] constrained or intimidated." *United States v. Cox*, 322 F.Supp.2d 832, 835-36 (E.D. Mich. 2004) (quoting *United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1998)). Considering the totality of the circumstances, this factor weighs in favor of custody.

### 4. The Duration of the Detention

The court next considers the duration of the interrogation. Lengthy questioning often weighs in favor of a finding that a defendant was in custody. *See Bassignani*, 575 F.3d at 886. While courts have not established a specific length of time that defines a custodial interview, the Ninth Circuit has held that hours-long interviews favor the conclusion that a defendant was in custody. *See, e.g., Barnes*, 713 F.3d at 1204 (finding an interrogation lasting roughly two hours indicative of custody); *Bassignani*, 575 F.3d at 886 (finding a two and a half hour long interrogation was "at the high end"). Here, Feuerstein and Dvorak interviewed Streitz for less than half an hour. Under relevant case law in this Circuit, this factor weighs against finding custody.

### 5. The Degree of Pressure Applied to Detain Streitz

This inquiry considers the extent that officers subjected a defendant to both physical and psychological force in the course of the interview. *See Dyer v. Hornbeck*, 706 F.3d 1134, 1143 (9th Cir. 2013) (M. Smith, J., concurring) (explaining that circumstances and authorities' psychological pressure created a setting of custody, despite the fact that the detainee was aware of her physical ability to leave during an unescorted bathroom break, or out of an unlocked door of the interrogation room).

In this case, Streitz was never handcuffed or otherwise physically restrained at any point while interacting with Feuerstein and Dvorak. The court recognizes

10

that by itself, the absence of physical restraints is not dispositive. *Barnes*, 713 F.3d at 1203. In *Barnes*, the Ninth Circuit weighed heavily the fact that the FBI agents directly confronted the defendant with evidence of guilt before administering *Miranda* warnings. 713 F.3d at 1204. In contrast, here, the ATF agents did not confront Streitz with evidence of guilt. They simply asked him if he possessed the gun found in the car in which he was riding. As noted above, the tenor of the interview was conversational, collegial, and respectful. Neither agent raised his voice, and although at one point Feuerstein expressed disbelief that Streitz never touched the weapon, neither agent ever accused Streitz of anything over the course of the interview. Indeed, at the end of it, Feuerstein expressed concern about Streitz's future in light of his girlfriend's drug addiction.

The court cannot ignore, however, the psychological pressure that exists for a probationer being interrogated at the probation office to which he was ordered to report by his probation officer. As the Eight Circuit explained, "if the fact that questioning taking place on a suspect's 'home turf' cuts against a finding of custody, then the converse must also be true: Interviews taking place on the police officers' 'home turf' are more likely to be police dominated." *United States v. Ollie*, 442 F.3d 1135, 1140 (8th Cir. 2006). In analyzing whether a defendant was in custody when his probation officer ordered him to meet with the police at the police station, the Eight Circuit reasoned in *Ollie* that because there is no clear

11

precedent holding that a parolee cannot be punished for ending an interview without the consent of the police or his parole officer, "a reasonable person in [the defendant's] position would have been extremely reluctant either to refuse the interview or to terminate it once it began." *Id.* at 1139-40. The court finds this reasoning persuasive.

Here, Streitz's probation officer admitted that Streitz would be in violation of his probation if he did not show up to the probation office. Weston lied to Streitz about the reason for the meeting and once Streitz arrived at the probation office for the meeting, Weston then told him that ATF agents were there to talk to him. Weston stated that Streitz *could not* leave his office without Weston as an escort. By delivering Streitz to law enforcement in his office and leaving, Weston strongly communicated to Streitz that he had to talk to law enforcement. Weston's failure to give Streitz permission to not talk to the agents before delivering him to them underscores this point.

The actual interrogation itself involved a very low degree of pressure to detain and question Streitz. However, a high degree of psychological pressure existed in light of the fact that Streitz was at the probation office involuntarily, was delivered to law enforcement by his probation officer, and could not physically leave the office without his probation officer. This factor weighs in favor of finding custody.

### 6. The Totality of the Circumstances

The first, third, and fifth *Kim* factors weigh heavily in favor of finding that Streitz was in custody. The second and fourth factors weigh against a finding of custody. As the custodial analysis requires the court to consider the totality of the circumstances, however, no one factor is dispositive. In addition, in some contexts, some factors may be accorded greater weight, and others less. Here, the question is whether the factors relating to the ATF agents' tactics in acquiring access to Streitz carry more weight than the factors that cover the agents' interviewing tactics of Streitz. The court finds, under these circumstances, they do.

The court finds that the factors that weigh against custody do so only because of the factors that weigh in favor of custody. In other words, the agents did not need to confront Streitz with guilt or interrogate him for a long time, because the questioning occurred at his probation officer's office, while he was on probation. As the government pointed out, Streitz had been a longtime probationer. Presumably, throughout his time on probation, his probation officer would confront him with evidence of alleged violations in the probation office. Under those circumstances, and under his probation conditions, he was required to be truthful and forthcoming in order to avoid further violations.

The coerciveness of the location itself is exacerbated here by the fact that Streitz was delivered to the ATF agents by his probation officer at the time of a

13

scheduled meeting with his officer, i.e., he was interrogated in a place and at a time where he historically was not allowed to remain silent and was required to be forthcoming. To that end, his interrogation was bookended by interactions with his probation officer. First, Weston delivered him to the agents. When the agents were done, Streitz did not, and could not, leave. Weston proceeded with the probation meeting, questioned him, requested a urinalysis, and set up Streitz's next probation meeting. Only after all that did he escort Streitz out to the lobby where he was free to go.

Considering the totality of the circumstances, a reasonable person in Streitz's situation would not have believed he could freely walk away from the ATF agents in Weston's office. Accordingly, the agents should have provided *Miranda* warnings. Since *Miranda* warnings were not given, Streitz's statements are inadmissible in the government's case-in-chief. *See United States v. Gomez*, 725 F.3d 1121, 1125-26 (9th Cir. 2013).

### B. Streitz's statements were voluntary

Streitz's statements to the agents on July 21, 2016, would also be inadmissible at trial if they were made involuntarily. *See Mincey v. Arizona*, 437 U.S. 385 (1978). Streitz should have received *Miranda* warnings at the probation office, but law enforcement failed to provide them. However, "[t]he failure of

14

police to administer *Miranda* warnings does not mean that the statements received have actually been coerced." *Oregon v. Elstad*, 470 U.S. 298, 310 (1985).

The test for determining whether a statement was voluntary is "whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *United States v. Fisher*, 137 F.3d 1158, 1165 (9th Cir. 1998) (internal quotation omitted). The defendant's state of mind is not enough to render a statement involuntary. *Colorado v. Connelly*, 479 U.S. 157, 165-66 (1986). Instead, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'" *Id.* at 167. Factors include (1) the defendant's youth; (2) the defendant's intelligence; (3) lack of advice of constitutional rights; (4) the length of detention; (5) the repeated and prolonged nature of the questioning; and (6) the use of physical punishment such as deprivation of food or sleep. *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003).

In reviewing the totality of the circumstances, the court finds that Streitz voluntarily gave statements to the agents at the probation office. Although Streitz argues that he suffers from clear mental disabilities which render his statements to Feuerstein and Dvorak involuntary, the court is not persuaded.

15

Nothing in the recording supports a finding that Streitz was suffering from clear mental disabilities during the conversation. Weston testified that he knew Streitz before his head injury and after his head injury and the only mental changes he noticed in Streitz after the head injury were some memory deficiencies. Poor memory is not the same as inability to understand questioning. Feuerstein and Dvorak did not engage Streitz in a complicated, drawn-out interrogation. They simply asked him if he had touched the gun that was found under his seat.

No coercive tactics or interrogation techniques were used that would require a high level of mental functioning to understand. Considering the totality of the circumstances, nothing in the record supports the conclusion that Streitz could not understand what was going on and Streitz's will was not overborne when he made his statement to the agents. *See Culombe v. Connecticut,* 367 U.S. 568 (1961) ("If his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due-process). Streitz voluntarily provided the statements to law enforcement at the probation office.

### III. Conclusion

For the reasons stated above, Streitz's Motion to Suppress (Doc. 21) is GRANTED. The government may not use Streitz's statements made during his meeting with ATF agents on July 21, 2016 in its case-in-chief.

16

DATED this 15th day of June, 2017.

／s／ Susan P. Watters
SUSAN P. WATTERS
United States District Judge